IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHIMBECCA ROYLANCE JARVIS, | CV 20-37-M-DLC-KLD |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.

## I.  Procedural Background

Plaintiff filed an application for supplemental security income benefits on November 30, 2015, seeking Title II benefits. She also filed for Title XVI benefits on January 7, 2016. In both applications, Plaintiff alleged an onset date of disability February 8, 2013. (Doc. 20 at 19).  Plaintiff's claim was denied initially, on reconsideration, and by an ALJ on January 27, 2020. The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision final. (Doc. 20 at 19). Jurisdiction vests with the Court pursuant to 42 U.S.C. § 405(g).

## II.  Legal Standards

### A. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

2

### B. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) they suffer from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations.

3

20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the

claimant does have one or more severe impairments, the ALJ will proceed to step

three.

At step three the ALJ compares the claimant's impairments to the

impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and

416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments

meet or equal the criteria of a listed impairment, then the claimant is considered

disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's

residual functional capacity. The claimant's residual functional capacity is an

assessment of the work-related physical and mental activities the claimant can still

do on a regular and continuing basis despite her limitations. 20 C.F.R. §§

404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a

claimant's residual functional capacity is a critical part of steps four and five of the

sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual

functional capacity to perform her past relevant work. 20 C.F.R. §§

404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to

engage in past work, the burden shifts to the Commissioner at step five to establish

that the claimant can perform other work that exists in significant numbers in the

national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

### III. Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 13, 2018.  The ALJ further found that Plaintiff has not engaged in substantial gainful activity since February 8, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq*.) (Doc. 20 at 21).

At step two the ALJ found Plaintiff had the following severe impairments: (1) diabetes mellitus with peripheral neuropathy, (2) atrial fibrillation (afib), (3) obesity, (4) migraines, (5) obstructive sleep apnea (OSA), (6) restless leg syndrome (RLS) and (7) asthma (20 C.F.R. § 404.1520(c) and 416.920(c)). (Doc. 20 at 21). The ALJ determined these impairments limit Plaintiff's ability to perform basic work functions. (Doc. 20 at 21). The ALJ found that Plaintiff has other, non-severe impairments such as hypothyroidism, anxiety, depression, and personality disorder. (Doc. 20 at 22). The ALJ determined these impairments did

not preclude the Plaintiff's ability to do basic work and were therefore, non-severe.

At step three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525, 4041526, 416.920(d), 416.925 and 416.926).

The ALJ found Plaintiff had the residual functional capacity to perform sedentary work as follows:

> " the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) with the capacity for lifting, carrying, pushing and pulling up to twenty pounds occasionally, ten pounds frequently; she is limited to standing and walking not more than three hours total in an eight-hour day; can sit for up to six hours total in an eight-hour day; is limited to not more than frequent operation of foot controls with the bilateral lower extremities and frequent operation of hand controls with the bilateral upper extremities; the claimant cannot more than frequently finger and feel with the bilateral upper extremities; should never climb ladders, ropes or scaffolds; only occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; should have no exposure to unprotected heights, moving mechanical parts or other workplace hazards; should have no exposure to weather, humidity, wetness, dust, odor, fumes, gases or other pulmonary irritants; no exposure to extreme cold, extreme heat, vibration, or work on rough or uneven surfaces; and is limited to carrying with one hand only to allow for the use of a handheld assistive device."

At step four the ALJ determined Plaintiff was unable to perform any past relevant work as a newspaper delivery driver or a cashier/checker. (Doc. 20 at 35). Proceeding to step five, the ALJ found, based on the vocational expert's testimony, that there were other jobs existing in significant numbers in the national economy

that Plaintiff could perform, including election clerk, call out operator, and addresser. (Doc. 20 at 36).

Plaintiff argues the ALJ decision is not supported by substantial evidence and raises the following issues on appeal. First, Plaintiff maintains the ALJ failed to consider the findings and opinions of Plaintiff's treating physicians. Second, Plaintiff argues the ALJ improperly evaluated Plaintiff's credibility. Third, Plaintiff contends the ALJ failed to properly consider Plaintiff's severe impairments, including the time required to attend medical appointments (S.S.R. 96-8p), within the RFC or the vocational consultant's hypothetical questions. Finally, Plaintiff argues the ALJ's hypothetical question was unsupported and unreliable.

## A. Medical Opinion evidence

Plaintiff argues the ALJ erred by failing to consider and not mentioning opinions of treating physician Dr. Terry Smith, D.O.. When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is,

7

in turn, entitled to greater weight than the opinion of a non-examining physician."
*Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is
responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th
Cir. 2012). If a treating physician's opinion is "well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is not inconsistent
with the other substantial evidence" in the record, it is entitled to controlling
weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's
opinion is not entitled to controlling weight, the ALJ considers several factors in
determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors
include the "[l]ength of the treatment relationship and the frequency of the
examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495
F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant
to the ALJ's evaluation of any medical opinion, not limited to that of a treating
physician, include: (1) the supportability of the opinion; (2) the consistency of the
opinion with the record as a whole; (3) the specialization of the treating or
examining source; and (4) any other factors that are brought to the ALJ's attention
that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

To discount the uncontroverted opinion of a treating or examining physician,
the ALJ must provide clear and convincing reasons for doing so and those reasons

must be supported by substantial evidence. *Lester,* 81 F.3d at 830 (9th Cir. 1995).

To discount the controverted opinion of a treating or examining physician, the ALJ

must provide specific and legitimate reasons supported by substantial evidence in

the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989).

       i.  Dr. Terry Smith[1]

In her brief, Plaintiff argues that the ALJ failed to provide any justification

for discounting the findings and opinions of Dr. Smith.  Plaintiff states that the

ALJ ignored records which established Dr. Smith expected no significant

improvement and did not recommend Plaintiff return to work. (Doc. 27 at 2-3;

Doc. 20 at 473).  However, a review of the ALJ's decision reveals the exact

opposite:  the ALJ considered and accepted the findings of the Dr. Smith and

incorporated those findings into her decision.

The ALJ considered the medical records from Dr. Smith and his practice

group and discussed them in her decision.  Specifically, the ALJ cited to notes

from Dr. Smith when discussing Plaintiff's diabetes and neuropathy. (Doc. 20 at

---

[1] The records appear to reference both Terry A. Smith, D.O., an internal medicine
doctor at Providence St. Joseph, and Adam T. Smith, D.O., also a provider at
Providence St. Joseph. See (Doc. 20 at 444, 389).

27-28). Dr. Smith's records note that Plaintiff has "brought her blood sugar under control" and that she should potentially receive conduction studies for her neuropathy. (Doc. 20 at 460, 483, 677, 637). Further, most of the ALJ's record citations throughout her entire opinion refer to progress notes from Dr. Smith. For example, when discussing Plaintiff's diabetes and neuropathy, the ALJ cites Dr. Smith opinions from 2015- 2018. (Doc. 20 at 26-27, [citing pages 453-54, 473, 483, 677, 707]). The ALJ used these opinions to note that Dr. Smith continually monitored Plaintiff's diabetes and successful diet management, checked on Plaintiff's neuropathy progression, and prescribed various medication to assist with treating both Plaintiff's "well controlled diabetes" and neuropathy. (Doc. 20 at 453-54, 483, 677).

Plaintiff appears to claim that the ALJ erred because she did not reference a specific treatment note from 2015. The note says:

> "She is assembling records for Social Security to review regarding her disability application. With all factors considered and particularly the impairment from the neuropathy, she is not a good day (sic) for employment. With continued weight loss and good diabetic care, it is possible that things could improve but would not expect significant improvement for her to treat (sic) return to work in next 12 months."

(Doc. 20 at 473). The Court finds this progress note in isolation does not establish disability, nor the absence of this note in the ALJ opinion equate to error by the ALJ.

10

The other records Plaintiff argues were omitted note significant improvement to sleep, diabetes, and overall, well-being. (Doc. 20 at 669, 704, 708). Further, Plaintiff cites records where she has stated generalized subjective symptoms, but the medical examination findings by Dr. Smith highlight Plaintiff's positive response to prescribed treatment. (See Doc. 20 at 415, 418, 442, 663-65). It is true that Dr. Smith commented on Plaintiff's hardships regarding employment while treating her impairments, often in response to Plaintiff's subjective history. (Doc. 20 at 389, 449, 473). Ultimately, however, Dr. Smith concluded that her diabetes and neuropathy were responding well to medication, as evidenced by her benign neurological studies and improvement with medicine as noted in the medical records. (Doc. 20 at 458, 669, 673).

Although Plaintiff argues the ALJ improperly discounted the findings of Dr. Smith, the ALJ reasonably and permissibly relied on the findings of Dr. Smith to conclude Plaintiff was not disabled.  Thus, this Court holds the ALJ did not err in deciding what weight to give the opinions of Dr. Smith.

ii. Consulting Providers

Plaintiff does not argue the ALJ disregarded the opinion of Dr. Smith in favor of the opinion of an examining physician.  However, it is worth noting that the opinions of the consulting providers Dr. William Fernandez, M.D., Dr. Marsha McFarland, Ph.D., Dr. Theresa Reed, Ph.D., and Dr. Robert Bateen, Ph.D., are

consistent with the findings and opinions of Plaintiff's treating providers. Drs. Fernandez, Bateen, McFarland, and Reed found the objective evidence and subjective accounts of Plaintiff's daily activities supported the conclusion that there was mild to moderate overall functional impairment due to mental conditions as well as the physical impairments listed by the ALJ. (Doc. 20 at 33). Because the findings and opinions of the examining providers are consistent with those of the treating providers, there is no contradiction or discrepancy to resolve, and the ALJ properly considered the opinion testimony in her determinations.

### B. Subjective symptom testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her subjective testimony. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036. Additionally, "An ALJ is not required to believe every allegation of disabling

pain." *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021). The rule is that a reviewing court will sustain an ALJ's finding so long as substantial evidence supports it, even if there is error in some of the ALJ's reasons. *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162- 63 (9th Cir. 2008). Further, an ALJ may rely on daily activities that either contradict a claimant's statements about her symptoms or that meet the threshold for transferrable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 20 at 26).

At her administrative hearing, Plaintiff testified that her extremely painful neuropathy, atrial fibrillation (afib), diabetes and high blood pressure, dizziness and consistently feeling tired limited her ability to work. (Doc. 20 at 51). The ALJ discounted these statements for various reasons. First the ALJ found that Plaintiff's statements about her daily functioning were inconsistent with the record. Plaintiff argues the ALJ inappropriately discounted her testimony simply because she was able to perform some daily activities such as shop, drive, and pay bills. (Doc. 24 at

27). But the ALJ noted that Plaintiff's ability to shop in stores for up to an hour, cook, drive, and do chores is inconsistent with her statements that she cannot lift more than 10 pounds or walk for more than 100 feet at a time (Doc. 20 at 328, 332, 334). Her primary provider, Dr. Smith, discussed Plaintiff beginning to add aerobic exercise to her daily routine. (Doc. 20 at 461). Additionally, Plaintiff testified that she could not follow instructions or concentrate, but she stated in her medical records that she can follow instructions "very well" and she also plays puzzle games in her free time. (Doc. 20 at 334).

Second, the ALJ found that treatment was working to improve Plaintiff's neuropathy and diabetes. Although Plaintiff alleged debilitating neuropathy in her hearing, her records showed improvement of her symptoms with Lyrica and Pregablin. (Doc. 20 at 458). Additionally, Plaintiff's neurology work ups and nerve conduction studies were negative. (Doc. 20 at 458). The ALJ concluded that Plaintiff's neuropathy was not as intense as alleged when the record showed Plaintiff responded well to prescribed medications in addition to benign nerve conduction studies. (Doc. 20 at 27-28).

Third, an increase in Metformin and changes in diet helped to stabilize Plaintiff's diabetes, leading to "excellent dietary management". (Doc. 20 at 457, 660). With regards to her afib, Plaintiff was put on Propranolol and Warfarin, as well as daily aspirin. (Doc. 20 at 614). Along with her blood pressure medication,

14

this helped lessen her symptoms and she was transitioned to Coreg as her heart condition continued to improve. (Doc. 20 at 498).  In her opinion, the ALJ thoroughly went through the treatment records surrounding Plaintiff's other symptoms to show how treatment helped her manage her impairments. (Doc. 20 at 26-32). Ultimately, the Court finds the ALJ reasonably explained how the medical records contradict Plaintiff's testimony.

Finally, the ALJ noted that Plaintiff claimed she frequently fell, but only sought treatment for falls that happened in the dark and when Plaintiff fell in a hole. (Doc. 20 at 34). The ALJ said the cane Plaintiff uses to prevent falls is a preventative measure consistent with her testimony. Although the ALJ noted the medical evidence of Plaintiff's hand neuropathy was not fully supportive of significant limitations, she felt that Plaintiff's pain was indicative of needing more limitations when calculating Plaintiff's RFC. Accordingly, the Court concludes the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's testimony as to her impairment symptoms and activity abilities.

## C. Treatment Time and RFC

Plaintiff argues the ALJ ignored her own regulations by failing to analyze the mechanics of treatment in order to discount Plaintiff's alleged disability.  She states the ALJ did not provide specific, clear, and convincing reasons to reject the

sheer volume of medical care necessary for Plaintiff's severe impairments under

SSR 96-8. (Doc. 24 at 29).  SSR 96-8 requires the ALJ to consider the effects of

the frequency and duration of Plaintiff's medical treatment on the residual

functional capacity.  Plaintiff does not argue that any medical providers opined that

she would be absent from work for any specific amount of time due to her

impairments; instead, Plaintiff argues that she would miss approximately two days

of work for medical visits per month. (Doc. 24 at 28). Plaintiff further argues that

she is susceptible to ongoing threats and her untreated neuropathy leads to many

medical appointments that were not considered by the ALJ.

The RFC must be based on all relevant evidence, such as "the effects of

treatment, including limitations or restrictions imposed by the mechanics of

treatment (e.g., frequency of treatment, duration, disruption to routine, side effects

of medication)."  SSR 96-8p, 1996 WL 374184, *5 (July 2, 1996).  Failing to

consider the effect of Plaintiff's treatment needs is reversible error.  *Edmunds v.*

*Kijakazi*, 2021 WL 4452762, *6 (D. Mont. September 29, 2021).  When a plaintiff

"has presented evidence sufficient to establish the possibility that the frequency of

[her] medical appointments may inhibit [her] ability to work on a 'regular and

continuing basis', the Court should remand to the ALJ for development in the

record and the appropriate consideration.  *Bourcier v. Saul*, 856 Fed. Appx. 687,

691 (9th Cir. 2021).  However, frequency of appointments alone cannot be a

disabling medical impairment. *Goodman v. Berryhill*, 2017 WL 4265685, * 3
(W.D. WA. September 25, 2017). Instead, to be disabling, there must be evidence
that the frequency of the treatment is necessitated by the Plaintiff's medical
condition and that is substantiated by the evidence. *Goodman*, * 3. The ALJ
should also consider whether Plaintiff could schedule medical appointments
outside of working hours or grouped in such a way that she would not be precluded
from working. *Goodman*, * 3. Finally, the ALJ should also consider whether the
need for the number of appointments would be ongoing or would subside.
*Bourcier*, 856 Fed. Appx. At 691.

In this case, the vocational expert testified that being off task for more than
15% of the workday or absent two days per month would preclude all work in the
national economy. (Doc. 20 at 76). The ALJ made no findings regarding the
frequency of Plaintiff's medical appointments, the ability to schedule outside
working hours, or the potential that the frequency would be ongoing. Because
Plaintiff's treatment history demonstrates the potential of meeting those thresholds,
the ALJ erred in failing to consider or discuss Plaintiff's treatment needs when
determining Plaintiff's RFC.

Plaintiff also argues the ALJ improperly discounted Plaintiff's untreated
neuropathy under SSR 96-8p. (Doc. 24 at 28). The record shows the ALJ
considered Plaintiff's neuropathy when determining Plaintiff's RFC and discussed

it in her decision. The ALJ repeatedly noted Plaintiff's neuropathy in her opinion when she summarized Plaintiff's medical records. (Doc. 20 at 26-28). The ALJ noted that in 2015 Plaintiff's prescribed Lyrica was helping the neuropathy, and that Plaintiff's neurology work ups had been negative. (Doc. 20 at 26). The ALJ further noted that Plaintiff had a nerve conduction study that also appeared to be normal, but was placed on Pregabalin, which helped to combat her symptoms. Additionally, the ALJ found that in 2016, Plaintiff's neuropathy was still present, but she was prescribed Amitriptyline, Lyrica and Naproxen for her discomfort. (Doc. 20 at 27). The ALJ also noted that Plaintiff's doctor prescribed exercise even though she complained of debilitating foot pain. (Doc. 20 at 26). The ALJ noted Plaintiff's worsening neuropathy in a 2018 record but stated she had been prescribed Cymbalta to help with the pain. (Doc. 20 at 28).

Further, the record shows that when determining Plaintiff's RFC from the medical records and the opinions of the consulting providers, the ALJ properly considered Plaintiff's neuropathy. The ALJ determined that Plaintiff must alternate between sitting and standing positions in order to accommodate the pain in her feet. (Doc. 20 at 32). The ALJ stated Plaintiff's RFC needed to include the ability to use a handheld device for balance, and that she was limited regarding the use of foot controls to further account for her neuropathy. (Doc. 20 at 34). The Court finds the ALJ accounted for Plaintiff's neuropathy when determining her RFC.

### D. Vocational expert

Plaintiff argues the ALJ's hypothetical was unsupported because the ALJ did not include all of Plaintiff's limitations. Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the claimant. *Embrey*, 849 F.2d at 422. "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

The Court has determined that the ALJ did not develop the record enough to discount Plaintiff's volume of medical treatment time when assessing her RFC. These errors may have affected the ALJ's RFC determination and hypothetical, which in turn, could have undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

### IV. <u>Remand</u>

Plaintiff requests the Court remand this matter for an award of benefits. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved

before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should reconsider whether Plaintiff can perform work found in the national economy on a regular and continuing basis, based upon a hypothetical that incorporates all of Plaintiff's impairments and limitations. Further, the ALJ should develop the record surrounding the time required for Plaintiff's treatment.

### V. <u>Conclusion</u>

For all the above reasons, IT IS RECOMMENDED that this Commissioner's decision is REVERSED, and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

*//*

DATED this 9th day of March, 2022

_____
Kathleen L. DeSoto
United States Magistrate Judge