IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHIMBECCA ROYLANCE JARVIS, | CV 20–37–M–DLC |
| Plaintiff, | |
| v. | ORDER |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security | |
| Defendant. | |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendations. (Doc. 29.) Judge DeSoto entered her Findings and Recommendations on March 9, 2022, recommending that Defendant Commissioner of Social Security's decision denying Plaintiff Chimbecca Jarvis's application for disability benefits under Titles II and XVI of the Social Security Act be reversed and remanded for further proceedings. (*Id.* at 20.)

The Commissioner of Social Security filed an objection to the Findings and Recommendations. (Doc. 30.) Upon the filing of an objection, the district court must undertake a de novo review of those portions of the magistrate judge's finding and recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1). De novo review is only necessary where a party files objections within fourteen (14) days after being served with the Findings and Recommendations. *Id.*; *Shiny Rock Mining Corp. v. United States*, 825 F.2d 216, 218 (9th Cir. 1987) ("Because no objections to the magistrate's report were timely

1

filed, the district court was relieved of its obligation to review the record de novo.").  A proper objection must "itemize" each factual finding and recommendation to which objection is made, "identifying the evidence in the record the party relies on to contradict that finding . . . [and] setting forth the authority the party relies on to contradict that recommendation."  D. Mont. L.R. 72.3(a).  The Court reviews for clear error those findings and recommendations to which no party timely objects.  *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).  Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed."  *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (internal quotation marks omitted).

## PROCEDURAL BACKGROUND

Plaintiff filed applications for disability benefits under Title II and Title XVI on November 30, 2015, and January 7, 2016, respectively.  (Doc. 20 at 19.)  In both applications, Plaintiff alleged a disability onset date of February 8, 2013.  (*Id.*)  Plaintiff's claims were denied initially on March 29, 2016 and upon reconsideration on March 14, 2017.  (*Id.*)  Following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claims on February 5, 2019.  (*Id.* at 36.)  On January 27, 2020, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  (*Id.* at 5.)

Plaintiff filed her Complaint on March 17, 2020, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  (Doc. 2.)

Plaintiff filed an opening brief on May 4, 2021, and sought reversal of the
Commissioner's decision on four grounds: (1) the ALJ failed to adequately
consider the findings and opinions of Plaintiff's treating physician, (2) the ALJ
improperly evaluated Plaintiff's credibility, (3) the ALJ failed to evaluate the
effects of Plaintiff's treatment for her conditions, and (4) the ALJ's hypothetical
questions to the vocational expert and the expert's testimony were unsupported and
unreliable. (Doc. 24 at 24–30.) Plaintiff requested that the Court remand the
proceedings for an award of benefits. (*Id.* at 30.)

The Commissioner filed a response brief on June 1, 2021, arguing that
(1) the ALJ adequately considered treatment notes from Plaintiff's treating
physician, (2) the ALJ reasonably discounted Plaintiff's subjective complaints, and
(3) Plaintiff failed to provide evidence that her course of treatment would prevent
her from working. (Doc. 25 at 4–13.) The Commissioner urged the Court to
affirm the Commissioner's final decision. (*Id.* at 16.) Alternatively, the
Commissioner argued that even if the ALJ did err, remand for further proceedings
was the appropriate remedy. (*Id.* at 14–15.)

On March 9, 2022, Judge DeSoto issued the findings and recommendations
at issue. Judge DeSoto found that the ALJ did not err in weighing the opinion of
Plaintiff's treating physician. (Doc. 29 at 7–12.) Judge DeSoto further found that
the ALJ provided clear and convincing reasons, supported by substantial evidence
in the record, for discounting Plaintiff's subjective symptom testimony. (*Id.* at 12–
15.) Judge DeSoto also found that the ALJ properly considered Plaintiff's
neuropathy but failed to consider Plaintiff's treatment needs when determining her

Residual Functional Capacity ("RFC").  (*Id.* at 15–18.)  Finally, Judge DeSoto found that the ALJ's failure to consider Plaintiff's medical treatment needs could have affected the RFC determination, the reliability of hypothetical posed to the vocational expert, and the reliability of the vocational expert's testimony.  (*Id.* at 19.)  As a result, Judge DeSoto recommended that the Commissioner's decision be reversed and the proceedings remanded for further proceedings.  (*Id.* at 19–20.)

On March 23, 2022, the Commissioner filed objections to Judge DeSoto's Findings and Recommendations on the following grounds: (1) The Findings and Recommendations suggest facts not in evidence regarding the impact on Plaintiff's RFC resulting from medical appointments and treatment (Doc. 30 at 4–8), and (2) neither the Social Security Act, the regulations, nor the subregulatory guidance on the Social Security Act requires ALJs to address the number of medical treatments that a Plaintiff has had, and a categorical rule imposing such a requirement is improper (*id.* at 8–11).

On March 29, 2022, Plaintiff filed a response to the Commissioner's objections and asserted the following: (1) Judge DeSoto properly found that the ALJ failed to consider Plaintiff's medical treatment and that such failure could have affected the RFC determination and reliability of the vocational expert's testimony, (2) Judge DeSoto erred by not considering how the ALJ's failure to account for Plaintiff's medical treatment impacted the weight that the ALJ gave to the opinion of Plaintiff's treating physician and by not directing the ALJ to reconsider that opinion, and (3) Judge DeSoto erred by not considering how the ALJ's failure to account for Plaintiff's medical treatment impacted the ALJ's

4

evaluation of Plaintiff's credibility and by not directing the ALJ to reevaluate Plaintiff's credibility finding.  (Doc. 31 at 2–11.)  This Court will only review de novo the issues underlying the first assertion, as the latter two assertions were not raised by objection within the statutory fourteen-day time period.  These latter two assertions will be reviewed, as are all findings not specifically and timely objected to, under the clearly erroneous standard.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) allows limited judicial review of Social Security benefit determinations after the Commissioner, following a hearing, has entered a final decision.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  The Court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error."  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U. S. 197, 229 (1938)).  If the ALJ's decision is supported by such evidence and the ALJ applied the correct legal standards, the Court must affirm the Commissioner's adoption of that decision.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews*, 53 F.3d at 1039.  Thus, "[w]here evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

5

Finally, the Court will not reverse an ALJ's decision for errors that are harmless. *Id.*

## DISCUSSION

### A. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) they suffer from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

In determining whether a claimant qualifies as disabled under the Social Security Act, the ALJ follows a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920.  In steps one through four, the claimant bears the burden of establishing disability.  *Burch*, 400 F.3d at 679.  If she meets this burden, the burden of proof shifts to the Commissioner in step five.  *Id.*

In step one of the evaluation, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is, then they are not disabled under the meaning of the Social Security Act.  *Id.*  If they are not, the ALJ proceeds to the second step in the evaluation.

In step two, the ALJ determines whether the claimant has any impairments—singly or in combination—that qualify as severe under the

applicable regulations and have lasted or are expected to last at least twelve (12) months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments qualifies as severe if it "significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant does not have a severe impairment, the claimant is not disabled within the meaning of the Social Security Act.  *Id.*  If the claimant has a severe impairment, the ALJ proceeds to the third step.

In step three, the ALJ compares the claimant's impairments to the listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is disabled.  *Id.*  If the claimant's impairments do not, the ALJ proceeds to step four.

If the evaluation continues beyond step three, the ALJ must assess the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's residual functional capacity is the most that the claimant can still do in a work setting despite the physical and mental limitations caused by their impairments and any related symptoms.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In step four, the ALJ determines whether the claimant retains the RFC to perform their past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If they do, the claimant is not disabled.  *Id.*  If their RFC does not permit them to engage in past relevant work, the ALJ proceeds to step five.

In step five, the ALJ determines whether, considering the claimant's RFC, age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner bears the burden to prove this and can do so through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, the claimant is disabled.  *Id.*

### B. Steps One, Two, and Three

The ALJ followed the five-step evaluation process in evaluating Plaintiff's claim.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 8, 2013.  (Doc. 20 at 21.)  At step two, the ALJ determined that Plaintiff had seven impairments that qualified as severe under the applicable regulations: (1) diabetes mellitus with peripheral neuropathy, (2) atrial fibrillation, (3) obesity, (4) migraines, (5) obstructive sleep apnea, (6) restless leg syndrome, and (7) asthma.  (*Id.* at 21–23.)  At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 23–25.)  As there were no timely objections filed to Judge DeSoto's Findings and Recommendations upholding the ALJ's determinations at steps one, two, and three, the Court reviews these for clear

error.  Finding none, the Court overrules Plaintiff's untimely objections and adopts
the Findings and Recommendations in full.[1]

### C. Steps Four and Five

At step four, the ALJ determined that Plaintiff had the following exertional
and non-exertional capacities: To push, pull, lift, and carry up to twenty pounds
occasionally, ten pounds frequently; to stand and walk not more than three hours
total in an eight-hour day; to sit for up to six hours total in an eight-hour day; to
operate, not more than frequently, foot controls with the bilateral lower extremities
and hand controls with the bilateral upper extremities; to finger and feel with the
bilateral upper extremities not more than frequently; to never climb ladders, ropes,
or scaffolds; to only occasionally climb ramps and stairs, balance, stoop, kneel,
crouch, or crawl; to have no exposure to unprotected heights, moving mechanical
parts, or other workplace hazards; to have no exposure to weather, humidity,
wetness, dust, odor, fumes, gases, or other pulmonary irritants; to have no exposure
to extreme cold, extreme heat, vibration, or work on rough or uneven surfaces; and
to carry with one hand only to allow for the use of a handheld assistive device.
(Doc. 20 at 25.)

Based on these capacities and limitations, the ALJ determined that Plaintiff
had the RFC to perform sedentary work.  (*Id.*)  The ALJ found that this RFC

---

[1] Subsequent to Judge DeSoto's Findings and Recommendations, the Ninth Circuit held that its
caselaw concerning the evidentiary weight to be given to physicians' opinions on account of
their relationship with the claimant was superseded by regulation as to claims filed on or after
March 27, 2017.  *Woods v. Kijakazi*, 32 F.4th 785, 789–92 (9th Cir. 2022).  Because Plaintiff's
claims were filed before that date, this holding does not affect the Court's analysis.  (Doc. 20 at
19.)

prevented Plaintiff from engaging in her past relevant work as a newspaper delivery driver and cashier/checker.  (*Id.* at 35.)  Based on the Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff has the RFC to perform other work existing in significant numbers in the national economy.  (*Id.* at 35–36.)

Judge DeSoto found that the ALJ erred by failing to consider Plaintiff's treatment needs when determining her RFC.  (Doc. 29 at 15–17.)  Judge DeSoto further found that the ALJ failed to develop the record enough to discount the Plaintiff's volume of medical treatment time and found that such errors could have affected the RFC determination and hypothetical posed to the vocational expert. (*Id.* at 19.)  This is the finding to which the Commissioner has specifically objected, triggering de novo review.  (Doc. 30 at 2.)

Social Security Ruling (SSR) 96-8p requires the adjudicator to consider all relevant evidence in the record when assessing RFC, including "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  Generally, "failure to consider the effect of a claimant's treatment needs constitutes reversible error."  *Edmunds v. Kijakazi*, 2021 WL 4452762, at *6 (D. Mont. Sept. 29, 2021) (collecting cases).  However, where the error is harmless, such error does not warrant reversal.  *See, e.g.*, *Goodman v. Berryhill*, 741 F. App'x 530, 530 (9th Cir. 2018) (holding that failure to consider effects of claimant's treatment on his ability

to hold traditional day job was harmless because evidence showed he could work night shifts).

Importantly, in making the RFC determination, "the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p, 1996 WL 374184, at *2. Thus, frequent medical care, standing alone, cannot be considered a disabling impairment. *Goodman v. Berryhill*, 2017 WL 4265685, at *3 (W.D. Wash. September 25, 2017). Rather, "to be disabling, the frequency of medical treatment must be necessitated by the medical condition and be substantiated by the evidence." *Id.*

The ALJ must account for treatment time in the RFC determination and hypotheticals posed to the vocational expert where the claimant has "presented evidence sufficient to establish the possibility that the frequency of [the claimant's] medical appointments may inhibit [the claimant's] ability to work on a 'regular and continuing basis.'" *Bourcier v. Saul*, 856 F. App'x 687, 690–91 (9th Cir. 2021). Regular and continuing basis means eight hours per day for five days per week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *2. In accounting for treatment time and its impacts on the claimant's ability to work, the ALJ should consider whether the claimant has to schedule appointments during the workday or workweek, whether each appointment requires the claimant to be absent from work for a full day, and whether the claimant has an ongoing need for that number of appointments. *Bourcier*, 856 F. App'x at 691.

In several cases in which the record before the ALJ established frequent medical treatment, the findings of the ALJ have been remanded for failure to

11

consider treatment time in the RFC determination and hypothetical questions posed to the vocational expert. *See, e.g.*, *Smither v. Kijakazi*, 2022 WL 522622, at *6 (D. Mont. Feb. 22, 2022) (claimant averaged 3.66 visits per month in 2017 and 3.25 visits per month in 2018); *Childs v. Kijakazi*, 2022 WL 325913, at *8 (D. Mont. Feb. 3, 2022) (claimant would be absent 7.2 days per month); *Esman v. Kijakazi*, 2021 WL 5083842, at *7 (D. Mont. Nov. 2, 2021) (claimant averaged 2.25 medical visits per month in 2018 and 1.67 visits per month in 2019); *J.H. v. Saul*, 2020 WL 872308, at *9–11 (D. Minn. Jan. 28, 2020) (claimant had medical appointments on 50 days of a 33 month period). *But see Johnson v. Kijakazi*, No. 21-35844, 2022 WL 2953698, at *3 (9th Cir. July 6, 2022) (unpublished) (nine appointments within five months insufficient to establish inhibited ability to work on regular and continuing basis). In most of these cases, as in this case, the vocational expert testified that missing two or more days per month would preclude work in the national economy. *Smither*, 2022 WL 522622, at *3; *Childs*, 2022 WL 325913, at *8; *Esman*, 2021 WL 5083842, at *3; *J.H.*, 2020 WL 872308, at *9.

Here, Plaintiff alleges that she had approximately two medical visits per month. (Doc. 24 at 28.) A review of the administrative record shows that Plaintiff averaged approximately 0.5 visits per month in 2013, 1 visit per month in 2014, and 1.2 visits per month in 2015. (Doc. 20 at 410–720.) In 2016, Plaintiff averaged 1.5 visits per month, with one of those visits resulting in hospitalization for a period of six days. (*Id.*) Finally, in the first four months of 2018, Plaintiff averaged approximately 1 visit per month. (*Id.*) At the hearing before the ALJ, the Plaintiff also testified to the side effects of her treatments and medication,

including problems with memory, clumsiness, depression, fatigue, anxiety, and shortness of breath.  (*Id.* at 69–70.)  The vocational expert testified at the hearing that there are no jobs in the national economy for "a person who, for any reason, is going to be off task more than 15% of the typical eight-hour workday, or they're going to miss more than two days of work per month."  (*Id.* at 76.)

The Commissioner contends that Plaintiff must do more than point to the number of medical appointments that they have had in order to present sufficient evidence that the claimant's medical appointments and treatments interfere with their ability to work.  (Doc. 30 at 5–6.)  Rather, the Commissioner argues that the Plaintiff must prove that she has to schedule appointments during working hours and the extent of absences from work that such appointments would necessitate.  (*Id.*)  On this basis, the Commissioner has argued that Judge DeSoto's Findings and Recommendations suggest facts not in evidence.

However, the Findings and Recommendations do not assume that Plaintiff would miss more than two days per month due to medical appointments.  Rather, the Findings and Recommendations provide that "Plaintiff's treatment history demonstrates the <u>potential</u> of meeting those thresholds."  (Doc. 29 at 17 (emphasis added).)  Under SSR 96-8p, the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  SSR 96-8p, 1996 WL 374184, at *5.  Further, the ALJ must consider treatment time whenever the claimant establishes the "possibility" that the frequency of their medical appointments will impede their ability to engage in work on a regular and continuing basis.  *Bourcier*, 856 F. App'x at 690–91.  Here, the numbers cited by

13

Plaintiff and supported by her medical records, when coupled with the vocational expert's testimony, establish the possibility that the frequency of Plaintiff's medical treatments may inhibit her ability to work on a regular and continuing basis. The ALJ made no findings concerning the frequency of treatment, the ability to schedule treatment outside of working hours, or Plaintiff's ongoing need for this level of treatment. (Doc. 20 at 25–35.) In failing to make such findings and incorporate those findings into the RFC determination and the hypothetical posed to the vocational expert, the ALJ failed to consider Plaintiff's treatment needs and effects as required by SSR 96-8p.

Furthermore, hypothetical questions posed to the vocational expert are required to set out all the limitations and restrictions of the claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). A vocational expert's testimony "is valuable only to the extent that it is supported by medical evidence." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). To the extent that the hypothetical posed to the vocational expert fails to reflect all of a claimant's limitations, "the expert's opinion has no evidentiary value and cannot support the ALJ's decision." *Embrey*, 849 F.2d at 423.

Here, in questioning the vocational expert, the ALJ posed the following question:

> "So let's assume a person in the younger age category, with education as described by the Claimant, and past relevant work as we've just discussed. Further assume that this person is limited to work at the light exertional level, lifting, carrying, pushing, and pulling up to 20 pounds

occasionally, ten pounds frequently.  But this person is going to be limited to standing and walking not more than three hours total in an eight-hour day.  The person can sit for up to six hours total in an eight-hour day, is limited to not more than frequent operation of foot controls with the bilateral lower extremities and frequent operation of hand controls with the bilateral upper extremities.  And the person can not more than frequently finger and feel with the bilateral upper extremities.  This person should never climb ladders, ropes, or scaffolds, only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  Should have no exposure to unprotected heights, moving mechanical parts, or other workplace hazards, no exposure to weather, humidity, wetness, dust, odor, fumes, gases, or other pulmonary irritants.  No exposure to extreme cold, extreme heat, vibration, or work on rough or uneven surfaces. . . .  Are there unskilled jobs existing in significant numbers in the national economy within these limitations?"

(Doc. 20 at 73–74.)  The vocational expert testified that there were jobs in the national level that could be performed by such an individual.  (*Id.* at 74.)  The ALJ then provided another limitation that the individual could carry with only one hand to allow the use of a handheld assistive device.  (*Id.* at 75.)  The vocational expert again testified that there were jobs available.  (*Id.*)  Building on that hypothetical, the ALJ asked whether any job in the national economy allowed for an individual to be off task more than 15% of the workday or who missed work more than two days per month.  (*Id.* at 76.)  The vocational expert responded no.  (*Id.*)  The ALJ asked several additional hypotheticals, but none of them incorporated the potential effects of Plaintiff's treatment as a limitation in any of the questions posed.  In failing to develop the record enough to establish the limitations Plaintiff's medical treatment posed and failing to incorporate those potential limitations, if any, into the questions posed to the vocational expert, the ALJ erred.  As this error could

have affected the RFC determination and the vocational expert's testimony, the vocational expert's opinion lacks the requisite evidentiary value to support the ALJ's decision, and reversal is required.  The Commissioner's objection on this issue is overruled.

### D. Categorical Rule

In the Commissioner's objections to Judge DeSoto's Findings and Recommendations, the Commissioner contends that the Court has attempted to impose a categorical rule requiring the ALJ to discuss the number of appointments attended by a claimant.  (Doc. 30 at 10).

Reviewing courts generally may not impose "judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021).  The Commissioner cannot argue that the Findings and Recommendations impose a judge-made procedural requirement to consider the effects of treatment when assessing a claimant's RFC; the Social Security Administration imposes that requirement upon itself through SSR 96-8p.  The Commissioner argues that the Findings and Recommendations impose a judge-made requirement that the ALJ *discuss* the frequency of treatment in their decision "without regard to whether the record actually calls for" such discussion.  (Doc. 30 at 8–9.)

It is the duty of this Court, as the reviewing court, to examine the administrative record and "ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154.  Here, the ALJ was required to consider the frequency of treatment in assessing the

16

claimant's RFC and ability to engage in substantial gainful activity in the national economy. The Plaintiff had provided evidence in her medical treatment records that raised the possibility that she would miss work between one to two days a month for medical treatment alone. (Doc. 20 at 410–720.) The vocational expert testified that missing more than two days of work per month for any reason would preclude employment in the national economy. (*Id.* at 76.) In short, the record in this case *does* call for analysis of the effects of Plaintiff's treatment in determining her RFC and in posing hypotheticals to the vocational expert. This is a case-specific ruling, not a categorical rule. The Commissioner's objection on this issue is overruled.

### E. Remedy

The record does not require the ALJ to find Plaintiff disabled, even if the ALJ reconsiders the evidence in light of Plaintiff's time spent attending medical appointments. Thus, the appropriate remedy is to remand this case for further proceedings.

## CONCLUSION

IT IS ORDERED that Judge DeSoto's Findings and Recommendations (Doc. 29) are ADOPTED IN FULL. The Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

DATED this 28th day of February, 2023.

Dana L. Christensen, District Judge
United States District Court